UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

THOMAS SHEARER,

               Plaintiff,

     v.

TACOMA SCHOOL DISTRICT NO. 10,
and ART JARVIS, in his individual and
official capacity,

               Defendants.

CASE NO. C12-5532 RJB

ORDER ON MOTIONS FOR
SUMMARY JUDGMENT

     This matter comes before the court on Defendants' Motion for Summary Judgment on All Claims (Dkt. 12) and on Plaintiff's Cross-Motion for Partial Summary Judgment (Dkt. 17). Defendants' request for oral argument is not necessary and should be denied. The court has reviewed the relevant record and the remainder of the file herein.

PROCEDURAL HISTORY

     On May 18, 2012, plaintiff Thomas Shearer filed a civil action in Pierce County Superior Court against Tacoma School District No. 10 and Art Jarvis and Carla Santorno in their

1    individual and official capacities.  *Shearer v. Tacoma School District No. 10, et al.*, Pierce

2    County Superior Court No. 12-2-09150-7.  Dkt. 1-1.  The complaint alleged claims for wrongful

3    termination pursuant to RCW 28A; violation of RCW 28A.405 for failure to provide notice and

4    an opportunity for hearing before any adverse change in the contract status of a certificated

5    employee; breach of contract; promissory estoppel; and violation of the Fourteenth Amendment

6    procedural due process clause, pursuant to 42 U.S.C. § 1983.  Dkt. 1-1, at 9-12.  Federal

7    jurisdiction is based upon claims under 42 U.S.C. § 1983.

8         On June 19, 2012, defendants removed the case to federal court.  Dkt. 1.  On February

9    19, 2013, Ms. Santorno was dismissed as a defendant, pursuant to the stipulation of the parties.

10   Dkt. 11.  The Tacoma School District and Art Jarvis, in his personal and official capacities,

11   remain defendants.

12                          <u>MOTIONS FOR SUMMARY JUDGMENT</u>

13        **Defendants' Motion for Summary Judgment**.  On March 14, 2013, defendants filed a

14   motion for summary judgment, requesting that the court dismiss all claims.  Dkt. 12.  Defendants

15   contend (1) that the claims under 28 U.S.C. § 1983 should be dismissed because plaintiff had no

16   protected property interest in re-employment with the Tacoma School District for the 2011-12

17   school year; Dr. Jarvis is entitled to qualified immunity; the punitive damages claims are without

18   merit; and the record does not establish municipal liability on the part of the Tacoma School

19   District; (2) that plaintiff was not wrongfully terminated under RCW 28A because he was not a

20   Tacoma School District employee at the start of the 2011-12 school year; (3) that plaintiff had no

21   contract with the Tacoma School District for the 2011-12 school year and any claims to the

22   contrary are untimely; (4) that plaintiff's claim of promissory estoppel is without merit because

23   the Memorandum of Understanding (MOU) between the Tacoma School District and AISL did

24

1   not promise plaintiff reemployment with the Tacoma School District; and that plaintiff did not

2   rely upon any alleged promises by the Tacoma School District to reemploy him.  Dkt. 12.

3          On April 1, 2013, plaintiff filed a response, arguing that (1) he remains an employee of

4   the Tacoma School District because the Tacoma School District did not comply with the

5   requirements under RCW 28A.400.300(1)(a) to afford him notice that he was discharged, to

6   provide him with a right to a contested hearing, or to appeal the Tacoma School Board's

7   apparent decision to discharge him in 2007;  (2) Tacoma School District Policy 5350 cannot be

8   interpreted to supersede plaintiff's statutory due process rights; (3) plaintiff was entitled to due

9   process rights afforded to employees because he remained an employee under the Tacoma

10  School District's leave policies; (3) the Tacoma School District is liable under 42 U.S.C. § 1983,

11  pursuant to official policy, because plaintiff was deprived of his constitutionally protected

12  property interest in his employment without due process; Dr. Jarvis' decisions represented the

13  Tacoma School District's official policy; Dr. Jarvis is personally liable because he was recklessly

14  indifferent to plaintiff's constitutional rights; Dr. Jarvis is not entitled to qualified immunity

15  because he violated plaintiff's clearly established right to due process; (4) Dr. Jarvis is liable for

16  punitive damages because he was reckless or callously indifferent to plaintiff's constitutional

17  rights; (5) the Tacoma School District breached its contractual promises to plaintiff that he would

18  have a position with the Tacoma School District upon his return from AISL; the statute of

19  limitations of RCW 28A.645.100 does not apply because plaintiff was not provided sufficient

20  notice;  (6) the promissory estoppel claim survives because plaintiff reasonably relied on the

21  Tacoma School District's representation that he would have a position when he returned from

22  AISL.  Dkt. 17.

23

24

1    On April 5, 2013, defendants filed a reply.  Dkt. 20.  Defendants first argue that the

2    Tacoma School District is not liable under 42 U.S.C. § 1983. The Tacoma School District

3    maintains plaintiff was not discharged from the Tacoma School District.  Instead, the Tacoma

4    School District maintains that plaintiff did not obtain a Board-approved leave of absence

5    following the 2006-07 school year, and thereby abandoned his position with the Tacoma School

6    District under Policy 5350.  As a result, for purposes of the claims under 42 U.S.C. § 1983, the

7    Tacoma School District argues that plaintiff was not deprived of a protected property interest.

8    The Tacoma School District further argues that Dr. Jarvis was not an authorized policymaker

9    sufficient to establish municipal liability under 42 U.S.C. § 1983; that neither Dr. Jarvis'

10   decisions nor the Tacoma School District's reliance on Policy 5350 were deliberately or

11   recklessly indifferent to plaintiff's constitutional rights because the decisions were consistent

12   with state law.  Second, regarding the Section 1983 claims against Dr. Jarvis, defendants

13   maintain that Dr. Jarvis was not recklessly indifferent to plaintiff's alleged rights; Dr. Jarvis is

14   entitled to qualified immunity because plaintiff has not demonstrated existence of any clearly

15   established rights that Dr. Jarvis violated; and the punitive damages claim against Dr. Jarvis is

16   without merit.  Third, regarding the state law claims, the Tacoma School District maintains that

17   the Tacoma School District did not breach any contractual promises to return plaintiff to a

18   comparable position because the MOU was not in effect after 2007, but even if it was, the terms

19   of the MOU did not confer any employment rights on plaintiff; the issuance of leave forms is an

20   insufficient basis for a binding employment contract; plaintiff's contractual claims are untimely

21   because plaintiff failed to comply with the thirty day time limit under RCW 28A.645.010; and

22   plaintiff's promissory estoppel claim is without merit because he did not obtain a Board

23   approved leave after the 2006-07 school year.

24

**Plaintiff's Cross-Motion for Partial Summary Judgment**.  On April 1, 2013, plaintiff filed a motion for partial summary judgment on the claim for wrongful termination pursuant to RCW 28A; the claim for violation of RCW 28A.405; and the claim for violation of due process under 28 U.S.C. § 1983 against the Tacoma School District.  *See* Dkt. 17-1.  On April 22, 2013, defendants filed a response, arguing that there is no cause for wrongful termination pursuant to RCW 28A; the procedures under RCW 28A did not apply to plaintiff's situation; and plaintiff did not have a constitutionally protected interest in his employment with the Tacoma School District, and therefore there is no cause of action under 28 U.S.C. § 1983.  Dkt. 22.  On April 26, 2013, plaintiff filed a reply, maintaining that plaintiff was on construing contract status, on leave; he fulfilled his obligation to notify the Tacoma School District of his requests for continued leave; those requests were never denied; and, even if they were denied, the Tacoma School District did not provide plaintiff any opportunity to contest the change in his status.  Dkt. 23.

The primary, and first, issue to be decided involves plaintiff's claims under 42 U.S.C. § 1983, over which the court has original jurisdiction.

RELEVANT FACTS

**Arrangement Between Tacoma School District and American International School in Lagos (AISL).**  AISL was established by the U.S. Department of State and run pursuant to a Partnership Agreement/Memorandum of Understanding (MOU) with the Tacoma School District since 1965.  Dkt. 14-3, at 12-14.

The MOU provided that the Tacoma School District would identify Tacoma "staff members" who had expressed interest in a "teaching and/or administrative assignment" at AISL to the AISL Superintendent; that the Tacoma School District would "provide selected staff during the two-year contract with a leave of absence consistent with Tacoma School District

Board policies;" that extensions beyond the initial two-year contract would be considered by mutual agreement between AISL and the Tacoma School District; and that a copy of the employee's Annual Performance Evaluation would be forwarded to the Tacoma School District for inclusion in the employee's personnel file.  Dkt. 14-3, at 13.

The MOU included the following provisions with regard to the AISL Superintendent:

> The District shall identify interested candidates from Tacoma for the position of Superintendent to the AISL Board of Directors for their consideration.  These candidates will be considered along with candidates from other sources.  A successful candidate may be selected and hired by the AISL Board of Directors for up to three years, subject to satisfactory performance.  Extensions beyond the initial three-year period will be considered by mutual agreement between AISL and the District.  The process may include, but not be limited to, onsite visitation(s) by Board members to Tacoma and interview(s) of invited finalists at AISL.  Any costs associated with the selection process shall be the responsibility of AISL.
>
> The Superintendent is accountable to the AISL Board of Directors and, as such, shall be evaluated on an annual basis based upon the criteria established in Board policy and achievement of the goals and objectives of the Annual and Three-Year Work Plans.  A copy of the employee's Annual performance Evaluation shall be forwarded to the Tacoma School District for inclusion in the personnel file as provided in the employee's Personal Service Agreement.

Dkt. 14-3, at 13.

The effective date and the duration of the MOU are unclear. The MOU was apparently in the process of revision in 2007, but it is unclear whether a revision was adopted.

**Plaintiff's Employment from 1980-2005.**  Plaintiff began working for the Tacoma School District in 1980.  He resigned in 1992, and was rehired in 1996 into a certificated principal position.  In 2005, plaintiff served as the Principal at Mt. Tahoma high school.

**Continuing Contract Statutory Provisions**. The general relationship between teachers and their employer school districts is governed by the principles of contract law.  *See Arnim v. Shoreline School District No. 412*, 23 Wn.App. 150, 153 (1979).  Under Washington statutory provisions (RCW 28A) reemployment rights (continuing contract rights) are given to "current

1  employees it covers." *Id.*, at 154, *citing Simpson v. Kelso School Dist. 403*, 20 Wn.App. 545,

2  154 (1978).  The rights may be involuntarily cut off only if the statutory procedure is followed.

3  *Id.*  RCW 28A.405 provides for notice, and an opportunity for a hearing and appeal, if it is

4  determined that an employee's contract will not be renewed.  See 28A.405.210, and

5  28A.405.310, *et seq.*

6          **Tacoma School District Policy No. 5350**.  Tacoma School District Policy No. 5350

7  deals with Job Abandonment.  Dkt. 13, at 13.  That policy provides in relevant part, as follows:

8          An employee who receives a leave of absence and fails to return at the end of the
        authorized leave, or any employee who fails to report to work and does not notify the
9          district, pursuant to the appropriate procedure, is absent without authorization.  If the
        absence without authorization exceeds five (5) work days thereafter, said employee has
10          abandoned his or her job together with all employment rights.  A leave of absence request
        submitted pursuant to this procedure will be considered by the board of directors at its
11          next regular meeting.  The leave request is subject to board approval at its discretion.  If
        the leave is denied, the employee shall return to work immediately or shall be deemed to
12          have abandoned his or her job, together with all employment rights.

13  Dkt. 13, at 13.

14          **Plaintiff's Resignation and Leave of Absence for 2005-06 School Year.** On March 8,

15  2005, plaintiff resigned his "CERTIFIED" position as Principal of Mt. Tahoma High School,

16  effective July 1, 2005; the reason given was "Relocation."  Dkt. 14-3, at 1.  Plaintiff moved to

17  Arizona to take a position at a charter school for the 2005-06 school year.  At the time, Tacoma

18  School District administrators, arguably including plaintiff, could, if recommended by the

19  superintendent, request a leave of absence from the Tacoma School Board to pursue other

20  professional opportunities.  On March 24, 2005, the Board of Directors of the Tacoma School

21  District approved plaintiff's request for a Leave of Absence from his position as Principal at Mt.

22  Tahoma high school, effective July 1, 2005.  Dkt. 16-1, at 6.  Plaintiff's contract or employment

23  status was identified as "CONTINUING."  Dkt. 16-1, at 6.

24

On May 31, 2005, plaintiff filed a request for leave without pay, from July 1, 2005 to July 1, 2006.  Dkt. 14-3, at 3.  On March 25, 2005, plaintiff Assistant Superintendent of Human Resources Dr. Bruce Ullock sent plaintiff a letter, informing him that the Board of Directors had approved the leave of absence on March 24, 2005.  Dkt. 16-1, at 6.  Plaintiff apparently had not filled out the paperwork for requesting a leave of absence at the time of the Board of Directors' action, but did so subsequently.  Dkt. 16-1, at 8, 9, and 11.  On June 10, 2005, the request was approved by Dr. Ullock (Dkt. 16-1, at 11) and plaintiff was notified of the approval by electronic means on June 15, 2005.  Dkt. 16-1, at 11.

**Plaintiff's Employment Status for 2006-07 School Year.** In the Fall of 2005, while he was working in Arizona, plaintiff applied to serve as Superintendent of AISL.  In January of 2006, plaintiff was hired as Superintendent of AISL, to begin during the Summer or Fall of 2006.

On March 3, 2006, plaintiff sent a form (intent to return form) to the Tacoma School District indicating that he did not intend to return for the following year (2006-07) because he was assigned to AISL as Superintendent.  Dkt. 16-1, at 20.  On March 14, 2006, HR Specialist Gini Drummond sent an e-mail to plaintiff stating that she had received a letter from plaintiff indicating that he had completed the form to request leave to serve as Superintendent of AISL, but that she could not find the form.  Dkt. 16-1, at 22.  Ms. Drummond informed plaintiff that, "in order to process the leave, we need the information on the Request for Leave Without Pay form."  Dkt. 16-1, at 22.  On March 16, 2006, plaintiff submitted the form, requesting leave without pay, to begin on July 1, 2006, with a return date of July, 2007.  Dkt. 16-1, at 24.  The request was approved by Dr. Ullock on March 26, 2006.  Dkt. 16-1, at 24.  On the form, in bold, was the following statement:  "Following Human Resources action, confirmation will be sent by email.  Requests for unpaid leave over 90 days will be submitted to the school district's Board of

1  Directors for final approval." Dkt. 16-1, at 24.  On April 4, 2006, the Board of Directors

2  approved the request, and plaintiff was notified of the action.  Dkt. 16-1, at 26.

3          **Plaintiff's Employment Status for 2007-08 School Year.** On February 7, 2007, plaintiff

4  sent an e-mail to Ethelda Burke, identifying Tacoma School District employees who would be

5  remaining at AISL for the 2007-08 school year, and those who would be returning to Tacoma for

6  that year.  Dkt. 16-1.  The e-mail also stated as follows:

7          I believe that if Tacoma would like to exercise the option not to continue to grant leaves
        to Lori [plaintiff's wife] and I, we are comfortable with that decision.  However, I would
8        like to stay on Leave because it may help to sustain the AIS/Tacoma relationship for the
        time I am there.  It will be the districts [sic] decision not to grant the leaves.

9  Dkt. 16-1, at 28.
10
          Ms. Burke responded by e-mail, stating that "I will speak with Dr. Milligan [then
11
    Superintendent of  the Tacoma School District] about extending the leaves for your [sic] and
12
    your wife Lori."  Dkt. 16-1.  The record does not show that the Tacoma School Board took any
13
    action relating to extending plaintiff's leave for the 2007-08 school year, nor is there any
14
    document to show that plaintiff was informed that his request was either approved or denied by
15
    the Tacoma School Board.
16
          **Tacoma School District Policy 5270.**  Tacoma School District Policy No. 5270,
17
    "Resolution of Staff Complaints," provides a process to resolve "a claim by a staff member
18
    based upon alleged violation, misinterpretation, or misapplication of existing collective
19
    bargaining agreements, district policies or administrative regulations."  Dkt. 13, at 10-11.
20
          **Plaintiff's Employment Status for the 2008-09 School Year.** On November 16, 2007,
21
    in an e-mail exchange with Dan Besett, Principal at Wilson High School, regarding various
22
    questions about the AISL MOU, staffing issues, and leaves of absence, plaintiff stated as
23
    follows:  "I spoke with Ethelda last year in regards to my status and never new [sic] what came
24

ORDER ON MOTIONS FOR SUMMARY
JUDGMENT- 9

1  about.  She was going to get back to me and never did.  My statement to her was that I thought it

2  was in the best interest of the relationship to keep me on leave just to maintain a connection or it

3  was definitely going to get lost, however I was perfectly ok with a decision not to do that as

4  well."  Dkt. 16-1, at 30.  The e-mail exchange indicated that Art Jarvis had taken the position of

5  Superintendent of the Tacoma School District.  Dkt. 16-1, at 31-32.

6        In an e-mail to Mr. Besett on December 6, 2007, plaintiff  identified the status of several

7  individuals.  With regard to Lori Shearer, plaintiff stated : " ??????  2nd year (we just don't know

8  what ever happened with our situation)."  Dkt. 16-1, at 34.  With regard to himself, plaintiff

9  stated: "??????  2nd year."  Dkt 16-1, at 34.

10       Dr. Jarvis testified in a deposition that, during a meeting with plaintiff in January of 2008,

11  "I had the awareness that he [plaintiff] had left the district to go to Arizona and then from

12  Arizona ended up in the International School."  Dkt. 14-6, at 9.  Dr. Jarvis further testified that,

13  after that conversation in 2008, he and plaintiff had conversations twice a year, in June and

14  January; and that "[t]hey were never conversations of the superintendent and the principal."  Dkt.

15  14-6.  Dr. Jarvis further testified as follows:

16        So the point I'm really trying to make is that I've been a superintendent 27 years, and
          I've had people who were on leave and people who wanted to know what their status is,
17        people wanting to know where you're going to put them when they come back, some
          anxiety of what the district is going to decide, anxiety of whether you get lost in the
18        process.  None of that was present with Tom Shearer and I.

19        We acted, at least to the best of my knowledge, like we were colleagues.  He was doing
          his job in the International School. He would occasionally gift me with a trinket.  I have a
20        nice banner in my home that's hanging on the wall that says something—I don't know—
          superintendent, that he had done by one of the artisans in Africa.  I think I've got a tie
21        hanging in a tie rack.

22        So Tom would—that was the kind of relationship we had, but it was never—it never went
          into the place of "I'm on leave.  Can I have another year's leave?" being an example.
23        Never once in five years did Tom ask me about extending a leave or did I answer him in
          any way of "I won't extend a leave" or "I would extend a leave."  We never even had the

24

conversations.  That would not be at all typical of somebody who has a leave status, and particularly an administrative leave status.

I think the additional piece I would put in there—and then I'll quit on this lengthy answer—was when I told him, "You are not on leave," Tom did not argue with me.  He didn't say, "Well, Art, you're wrong.  I'm on leave, and I'm going to come back."

I walked away from each of those conversations, I guess, feeling good that I clarified. There was no confusion about it, at least in my mind.  And Tom never behaved in a way that was the employee where the superintendent just said, "Well, I don't know your status.  It just disappeared."

And I would say after a lot of years in the business I'm pretty well attuned to that.  If he would have said "No.  Something's gotten messed up here because I'm on leave, and it's been approved," we would have immediately gone to some other basis for how do we sort this out.

But I knew that the board had never approved the leave in terms of extending it. I knew that we had never recommended it.  I knew that he had gotten clarification from me.  And as I say, our relationship, the history, nothing implied—and we did not operate as if he was on leave from the district and expecting to be assigned when he came back.

Dkt. 14-6, at 11-12.

On April 24, 2008, plaintiff submitted a request for leave without pay, starting on July 1, 2008, with a return date of July 1, 2009.  Dkt. 16-1, at 37.  The request was "approved" by Gayle Elijah, Human Resources Director, on April 24, 2008, but the form stated as follows:  "Requests for unpaid leave over 90 days will be submitted to the school district's Board of Directors for final approval."  On June 30, 2008, Claudia Matheny from Human Resources sent plaintiff a letter that stated that "[y]our request for the 2008/09 school year to remain in Lagos has been approved."  Dkt. 16-1, at 39.  The letter did not indicate that the request had been or would be sent to the Board of Directors, or that the Board of Directors had approved the request.

**Plaintiff's Employment Status for the 2009-10 School Year.** On January 12, 2009, plaintiff submitted a request for an extension of leave for the 2009-10 school year. Dkt. 16-1, at 41.  On January 27, 2009, "GE" [Gayle Elijah] initialed the request as "ok" "in Lagos since 7-1-

05.” Dkt. 16-1, at 41.  The form which plaintiff had submitted stated that “[r]equests to extend a leave will be reviewed by Human Resources and must be approved by the School Board.”  Dkt. 16-1, at 41.  On July 22, 2009, Claudia Matheny of Human Resources sent an e-mail to plaintiff stating that year 5 was approved.  Dkt. 16-2, at 4.  Plaintiff testified in his deposition that he had no documentation that indicated that the Board of Directors had approved the leave for the 2009-10 school year.  Dkt. 16-2, at 15.

In a February 23, 2009 e-mail to Ms. Elijah regarding another employee, plaintiff stated that he had informed an AISL employee that she would not be permitted to stay on leave for the fourth year.  Dkt. 16-2, at 2.  “She is apparently sending in a resignation letter.  I am assuming that the same goes for me (since this is year 4)…Would you like for me to send in a resignation letter as well??”  Dkt. 16-2, at 2.  On February 24, 2009, Ms. Elijah responded:  “At this point, your status is being treated differently.  Not necessary.”  Dkt. 16-2, at 2.

Dr. Jarvis testified in a deposition that, at some point in 2009, he told Assistant Superintendent for Human Resources Laurie Taylor that plaintiff had mentioned to Dr. Jarvis that he had gotten a communication from the Tacoma School District, indicating that he was on leave.  Dkt. 15-3, at 20.  Dr. Jarvis stated that he told Ms. Taylor that “we had never taken that to the board and didn’t have any recommendation and that he didn’t have a leave status.”  Dkt. 15-3, at 20.

> So I made the assumption, perhaps erroneously, but I made the assumption that that
> would take care of it.  “Let’s just make sure that there isn’t a mistake being made
> downstairs because that’s not reflective of the status of where we really are.”

Dkt. 15-3, at 20-21. Dr. Jarvis stated that he did not follow up on his direction to Ms. Taylor; he assumed that it would be taken care of.  Dkt. 25-3, at 20-21.

ORDER ON MOTIONS FOR SUMMARY
JUDGMENT- 12

1      **Plaintiff's Employment Status for the 2010-11 School Year.** On January 24, 2010,

2  plaintiff sent an e-mail to Ms. Elijah, indicating that he requested to stay at AISL "4 years tom

3  [sic] is still on Admin leave.  Plans to return in 2011-2012."  Dkt. 16-2. At 6.

4      Dr. Jarvis testified in a deposition that, during his conversations with plaintiff in 2009 and

5  2010, plaintiff had been consistent in saying that when he was done, he'd like to work in Tacoma

6  again; and that plaintiff let Dr. Jarvis know that he was available.  Dkt. 14-6, at 13-14.

7      **Plaintiff's Employment Status for the 2011-12 School Year.** On May 20, 2010,

8  plaintiff sent an e-mail to Dr. Jarvis and to Ms. Taylor, with a copy to Deputy Superintendent

9  Carla Santorno.  Dkt. 16-2, at 18.  The e-mail stated as follows:  "I wanted to inquire as to my

10  official status in Tacoma.  I have heard many different things, but have not received any official

11  word in the past 10 months.  The last I heard is that I was on Admin leave, however I am not

12  completely sure this is the case.  I thought I would ask before I return this summer to meet with

13  you and others in the district as I plan my last year here at AIS Lagos.  I really would like to be

14  back in Tacoma in 2011, just not sure where I fit in."  Dkt. 16-2, at 18.

15      In September of 2010 (or perhaps earlier, during the summer), plaintiff met with Dr.

16  Jarvis and Ms. Santorno.  Dkt. 14-2, at 15-16.  During that meeting, Dr. Jarvis informed plaintiff

17  that he was not on leave.  Dkt. 14-2, at 16; 14-5, at 6.  Plaintiff stated in a deposition that this

18  took him by surprise, "because I hadn't heard that until that moment."  Dkt. 14-2, at 16.  Plaintiff

19  stated that he "just thought that was kind of weird."  Dkt. 14-2, at 19.

20      Dr. Jarvis stated in his deposition as follows:

21      When that seemed to cross into "I've got a leave" in 2010, when it was referenced, I was
        very direct.  As I recall it—I can't give you my exact words, but I think it was for all
22      practical purposes, "Tom, there is no leave."

23  Dkt. 14-6, at 14.

24

1        Plaintiff stated that after he and Ms. Santorno left Dr. Jarvis' office, Ms. Santorno stated

2   to him: "Don't worry about it. We want you back. And I'll take care of it." Or "It's"—

3   "Everything will be okay." Dkt. 14-2, at 20-21. In her deposition, Ms. Santorno stated that she

4   did not recall talking with plaintiff after the meeting with Dr. Jarvis. Dkt. 14-5, at 6.

5        In January of 2011, Human Resources sent plaintiff a form requesting that he inform the

6   Tacoma School District whether he planned to return to the Tacoma School District for the 2011-

7   12 school year. Dkt. 16-2, at 27. Ms. Taylor testified in a deposition that this was a computer-

8   generated form that was sent to plaintiff in error. Dkt. 14-4, at 5. On that form, dated January

9   18, 2011, plaintiff indicated that he planned to return for the 2011-12 school year. Dkt. 16-2, at

10  27.

11       On May 14, 2011, plaintiff sent a letter to Ms. Santorno, stating that "[t]he Tacoma

12  School District has been very accommodating to allow me to extend my services here to

13  complete the expansion of the current campus and the new Lekki campus High School facilities.

14  Yet, it is time to come home." Dkt. 16-2, at 29.  In that letter, plaintiff stated that he was unclear

15  as to his status

16          because the last official document I received from the District was sent from the Human
            Resources Department in February 2011 asking me of my intent to return which I filled
17          out and indicated that I would be back in June 2011. Previous to that, I had not received
            anything from the district since spring 2009, when I received an e-mail notice that my
18          circumstances were being treated outside the scope of the district's three year rule of
            service to AISL as part of the Memorandum of Understanding between AISL/Tacoma.
19          From that bit of correspondence, I had concluded that I would be welcomed back to the
            District when my tenure was finished at AISL. If I have misunderstood, please let me
20          know because my preference is to be there with the Tacoma School District.

21  Dkt. 16-2, at 30.

22

23

24

1      Plaintiff returned from Lagos on June 8, 2011.  Dkt. 16-2, at 43.  On August 26, 2011,

2  plaintiff wrote to Dr. Jarvis, requesting employment with the Tacoma School District.  Dkt. 16-2,

3  at 42.

4      In August of 2011, the Human Resources office informed plaintiff that his resignation

5  was to be placed before the Tacoma School Board.  Dkt. 14-4, at 16-17.  However, because Dr.

6  Jarvis believed that plaintiff was not an employee of the Tacoma School District, the resignation

7  was not placed before the Tacoma School Board.  *See* Dkt. 14-6, at 16.

8      On September 2, 2011, plaintiff sent an e-mail to Ms. Taylor and Ms. Elijah, stating that

9  Ms. Elijah had informed him eight days prior to the e-mail that there would not be an

10  administrative position for him in the Tacoma School District.  Dkt. 16-2, at 40.

11      On September 2, 2011, the school year began and was then interrupted by a two-week

12  teacher strike. On September 7, 2011, Dr. Jarvis wrote an e-mail to plaintiff, stating as follows:

13      We will be reviewing your request for a job placement following your five year absence.
        We will attempt to make sense out of this confusing situation.  In the meantime I will ask
14      that all contacts be directed to my office. When I have been able to gain enough
        information to respond directly, I will contact you.  In the meantime, if you wish to
15      provide other information pertinent to your request to be assigned to a position, please
        feel free to provide that directly to my office.

16  Dkt. 16-2, at 40.

17      On October 6, 2011, plaintiff's attorney submitted a letter to the Tacoma School District,

18  requesting that plaintiff return to a high school principal position or other equivalent

19  administrative position within the Tacoma School District.  Dkt. 13, at 5-6. On October 17, 2011,

20  the Tacoma School District, through counsel, denied the request.  Dkt. 13, at 8.

21                              <u>LEGAL STANDARD</u>

22      Summary judgment is proper only if the pleadings, the discovery and disclosure materials

23  on file, and any affidavits show that there is no genuine issue as to any material fact and that the

24

1   movant is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c). The moving party is

2   entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient

3   showing on an essential element of a claim in the case on which the nonmoving party has the

4   burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985).  There is no genuine issue

5   of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find

6   for the non moving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586

7   (1986)(nonmoving party must present specific, significant probative evidence, not simply "some

8   metaphysical doubt.").  *See also* Fed.R.Civ.P. 56(e).  Conversely, a genuine dispute over a

9   material fact exists if there is sufficient evidence supporting the claimed factual dispute,

10  requiring a judge or jury to resolve the differing versions of the truth.  *Anderson v. Liberty*

11  *Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors*

12  *Association*, 809 F.2d 626, 630 (9th Cir. 1987).

13        The determination of the existence of a material fact is often a close question.  The court

14  must consider the substantive evidentiary burden that the nonmoving party must meet at trial –

15  e.g., a preponderance of the evidence in most civil cases.  *Anderson*, 477 U.S. at 254, *T.W. Elect.*

16  *Service Inc.*, 809 F.2d at 630.  The court must resolve any factual issues of controversy in favor

17  of the nonmoving party only when the facts specifically attested by that party contradict facts

18  specifically attested by the moving party.  The nonmoving party may not merely state that it will

19  discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial

20  to support the claim.  *T.W. Elect. Service Inc.*, 809 F.2d at 630 (relying on *Anderson, supra*).

21  Conclusory, non specific statements in affidavits are not sufficient, and "missing facts" will not

22  be "presumed."  *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990).

23                                    DISCUSSION

24

**1. Federal Civil Rights Claims**

Defendants argue that the claims under 28 U.S.C. § 1983 should be dismissed because plaintiff had no protected property interest in re-employment with the Tacoma School District for the 2011-12 school year; Dr. Jarvis is entitled to qualified immunity; the punitive damages claims are without merit; and the record does not establish municipal liability on the part of the Tacoma School District.

In his cross-motion for summary judgment, plaintiff requests that the court grant summary judgment in his favor on the Fourteenth Amendment claims under 28 U.S.C. § 1983. Plaintiff maintains that, as an employee, the Tacoma School District was required to provide him notice and an opportunity to be heard, pursuant to *Cleveland Bd. Of Educ. v. Laudermill*, 470 U.S. 532 (1985) and pursuant to RCW 28A.400.300(1)(a);  the Tacoma School District is liable because, pursuant to official policy,  he was deprived of his constitutionally protected property interest in his employment without due process;  Dr. Jarvis is personally liable because he was recklessly indifferent to plaintiff's constitutional rights and is not entitled to qualified immunity; and Dr. Jarvis is liable for punitive damages because he was reckless or callously indifferent to plaintiff's constitutional rights.

***Qualified Immunity*** .  Defendants maintain that Dr. Jarvis is entitled to qualified immunity for civil rights claims asserted against him in his individual capacity.  Defendants contend that plaintiff was not a continuing contract employee, was not on a Board-approved leave of absence, and did not otherwise have any protected property interest in his alleged right to reemployment with the Tacoma School District.  As a result, defendants argue that it was not clearly established that plaintiff was entitled to any due process protections.

1   Plaintiff contends that he remains an employee of the Tacoma School District.  As a

2   result, he argues that he had a clearly established right, pursuant to RCW 28A.400.300(1)(a) and

3   to *Laudermill,* to notice that he was discharged, a right to a contested hearing, and a right to

4   appeal the Tacoma School Board's apparent decision to discharge him.  Plaintiff argues that Dr.

5   Jarvis is not entitled to qualified immunity because he violated plaintiff's clearly established

6   right to due process.

7   Defendants in a Section 1983 action are entitled to qualified immunity from damages for

8   civil liability as long as their conduct does not violate clearly established statutory or

9   constitutional rights of which a reasonable person would have known.  *Harlow v. Fitzgerald*, 457

10  U.S. 800, 818 (1982).  In analyzing a qualified immunity defense, the Court must determine: (1)

11  whether a constitutional right would have been violated on the facts alleged, taken in the light

12  most favorable to the party asserting the injury; and (2) whether the right was clearly established

13  when viewed in the specific context of the case.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

14  "The relevant dispositive inquiry in determining whether a right is clearly established is whether

15  it would be clear to a reasonable officer that his conduct was unlawful in the situation he

16  confronted." *Id.*  The privilege of qualified immunity is an immunity from suit rather than a mere

17  defense to liability, and like absolute immunity, it is effectively lost if a case is erroneously

18  permitted to go to trial.  *Mueller v. Auker*, 576 F.3d 979, 992 (9th Cir. 2009)(quoting *Mitchell v.*

19  *Forsyth*, 472 U.S. 511, 526 (1985).  Qualified immunity also protects a defendant from having to

20  bear the burdens of such pretrial matters as discovery.  *Behrens v. Pelletier*, 516 U.S. 299, 308

21  (1996).  *See also Act Up!/Portland v. Bagley*, 988 F.2d 868, 872-73 (9th Cir. 1993). In analyzing

22  a qualified immunity defense, courts are "permitted to exercise sound discretion in deciding

23  which of the two prongs of the qualified immunity analysis should be addressed first in light of

24

the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

In order to state a claim under 42 U.S.C. § 1983, a complaint must allege that (1) the conduct complained of was committed by a person acting under color of state law, and that (2) the conduct deprived a person of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds, Daniels v. Williams*, 474 U.S. 327 (1986). Section 1983 is the appropriate avenue to remedy an alleged wrong only if both of these elements are present. *Haygood v. Younger*, 769 F.2d 1350, 1354 (9th Cir. 1985), *cert. denied*, 478 U.S. 1020 (1986).

Plaintiffs may not be deprived of a constitutionally protected property interest in continued employment without due process of law. *Laudermill*, 470 U.S. at 538. Property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law...." *Laudermill*, 470 U.S. at 538, quoting. *Board of Regents v. Roth,* supra, 408 U.S., at 577. "An essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'" *Laudermill*, 470 U.S. at 542, quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950). Accordingly, to establish a due process violation, plaintiff must show that he has a protected property interest under the Due Process Clause of the United States Constitution and that he was deprived of the property without receiving the process that he was constitutionally due. *See Laudermill*, 470 U.S. at 538-39.

It appears to be clear that a constitutional right would have been violated on the facts alleged, taken in the light most favorable to plaintiff: that plaintiff was a continuing employee of the Tacoma School District. What is not clear is whether plaintiff's right to notice and a hearing was clearly established, viewed in the specific context of this case. It would not be clear to a

reasonable school superintendent in Dr. Jarvis' position that plaintiff had a right to be treated as a continuing employee.  There are no material issues of fact presented that would negate the conclusion that plaintiff's rights to due process, pursuant to RCW 28A.400.300(1)(a) and to *Laudermill*, were not clearly established in the eyes of a reasonable school superintendent in 2011.

Plaintiff was an employee of the Tacoma School District when he received leaves of absence for the 2005-06 and 2006-07 school years.  The MOU is ambiguous as to whether a Tacoma School District employee who served as AISL Superintendent would receive a leave of absence and for how long.  Even if an employee were entitled to a leave of absence, such leave of absence was required to be consistent with Tacoma School District Board policies.  The forms on which plaintiff requested a leave of absence indicated that Human Resources would approve the leave of absence, and then the request would be sent to the Board of Directors for decision (even though the process was inverted for the 2005-06 leave request).  Plaintiff was notified, for both the 2005-06 and 2006-07 school years that the Board of Directors had approved the requests for leave of absence.  As of June 30, 2007, plaintiff had not been approved for a leave of absence.  He did not pursue the grievance process that was available to him, to clarify whether his leave of absence request was presented to the Board of Directors, and what action, if any, the Board of Directors took on his request. Tacoma School District Policy No. 5350 provided that, if an employee who received a leave of absence failed to return within five days of the end of the authorized leave, the employee would be considered to have abandoned his or her job, together with all employment rights.  Plaintiff did not return to the Tacoma School District within five days of the end of the authorized leave.

1        Although plaintiff informed various staff members in 2007 that he would like to stay on

2   leave during the 2007-08 school year, he informed Ms. Burke that it would be the Tacoma

3   School District's decision not to grant the leave.  Plaintiff indicated to various staff members that

4   he did not know what had happened to his leave status for the 2007-08 school year.  However,

5   during that year, there is no evidence that he raised the issue with Dr. Jarvis himself, who was in

6   the Superintendent position by November of 2007.

7        Plaintiff submitted a request for leave without pay for the 2008-09 school year; although

8   the request was approved by Human Resources, there is no indication that the Board of Directors

9   approved the request.  Further, even though plaintiff had e-mail exchanges with Human

10   Resources staff/administators about his employment status, he was not notified that he had been

11   approved by the Board of Directors for leaves of absence for the 2009-10 or 2010-11 school

12   years, nor is there anything in the record to show that such leaves of absence had been approved

13   by the Board of Directors.

14        The Board of Directors, not the Human Resources Department, granted or denied leaves

15   of absence. The Board of Directors had not approved leaves of absence for plaintiff since the

16   2006-07 school year.  In the summer or early fall of 2010, Dr. Jarvis told plaintiff that he was not

17   on leave.  Pursuant to Policy 5350, Dr. Jarvis could reasonably have concluded that plaintiff had

18   abandoned his employment with the Tacoma School District because plaintiff had not been an

19   employee of the Tacoma School District since the end of the 2006-07 school year.  It was

20   reasonable for Dr. Jarvis to have concluded that plaintiff was not entitled to due process when

21   Dr. Jarvis determined that plaintiff was no longer an employee in 2011, and subject to notice and

22   an opportunity to be heard, whether pursuant to *Laudermill*  or pursuant to RCW 28A.405.300,

23   *et. seq.*  It would not have been clear to a reasonable person in Dr. Jarvis' position that his

24

1    conduct was unlawful in the situation he confronted.  It is not surprising that Dr. Jarvis—and, for

2    that matter, plaintiff—may have been confused about plaintiff's status. Such confusion, on this

3    record, does not arise to a violation of plaintiff's constitutional rights.

4          Even if it may be determined that plaintiff had a property interest in continued

5    employment with the Tacoma School District upon his return from AISL in 2011, it not clearly

6    established here that plaintiff was so entitled to employment and to due process. Dr. Jarvis is

7    entitled to qualified immunity,

8          ***Reckless Indifference to Plaintiff's Constitutional Rights***.  Plaintiff  maintains that Dr.

9    Jarvis is personally liable because he was recklessly indifferent to plaintiff's constitutional rights.

10   Plaintiff argues that Dr. Jarvis made the determination that plaintiff was not entitled to a position

11   for the 2011-12 school year, before he reviewed plaintiff's employment file.  As a result, plaintiff

12   claims that Dr. Jarvis' conduct was reckless or constituted gross negligence.  However, the

13   record shows that Dr. Jarvis knew that the Board of Directors had not approved leaves of

14   absence for plaintiff after the 2006-07 year.  Dr. Jarvis told plaintiff that he was not on leave in

15   the Summer or early Fall of 2010.  Dr. Jarvis' late review of plaintiff's personnel file in

16   September of 2011 does not establish any more than possible negligence, not that he was

17   recklessly indifferent to plaintiff's constitutional rights.

18        ***Punitive Damages***.  Plaintiff contends that Dr. Jarvis is liable for punitive damages

19   because he was reckless or callously indifferent to plaintiff's constitutional rights.

20        Punitive damages may be awarded in § 1983 cases when the defendants' deprivations of

21   the plaintiffs' civil rights were done either with malicious or evil intent or when the deprivation

22   was done with reckless disregard of the plaintiff's civil rights. *Smith v. Wade*, 461 U.S. 30, 47

23   (1983).  The purpose of punitive damages is to punish the defendant for malicious actions and to

24

1    deter others from engaging in similar conduct. *Id.*; *Memphis Community School District v.*

2    *Stachura*, 477 U.S. 299, 306, n. 9 (1986).  Punitive damages may not be awarded against a

3    municipality. *See Newport v. Fact Concerts, Inc.*, 453 U.S. 247 (1981).  Punitive damages

4    should be awarded only where an employer has acted with malice or reckless indifference to the

5    plaintiff's federally protected rights. *Kolstad v. American Dental Assn.*, 527 U.S. 526, 535

6    (1999).

7        Plaintiff concurs that punitive damages may not be awarded against the Tacoma School

8    District, and requests punitive damages only against Dr. Jarvis in his personal capacity.  As

9    discussed above with regard to the qualified immunity analysis, the record does not show that

10    Dr. Jarvis' actions were done with malicious or reckless indifference to plaintiff's civil rights.

11    Plaintiff is not entitled to punitive damages under 42 U.S.C. § 1983.

12        ***Municipal Liability for Federal Civil Rights Claims***.  Defendants contend that plaintiff

13    has not established municipal liability on the part of the Tacoma School District because plaintiff

14    had no protected property interest that was denied him by the Tacoma School District; the

15    Tacoma School District had no policy, ordinance, or decision that either amounted to deliberate

16    indifferent to plaintiff's constitutional rights or was the moving force behind a constitutional

17    violation; and there is no evidence of deliberately indifferent policies or deficiencies in the

18    Tacoma School District's hiring, training or supervision that caused a deprivation of plaintiff's

19    procedural due process rights.  Plaintiff argues that the Tacoma School District is liable under 42

20    U.S.C. § 1983, pursuant to official policy, because he was deprived of his constitutionally

21    protected property interest in his employment without due process; and because Dr. Jarvis'

22    decisions represented the Tacoma School District's official policy.  Plaintiff maintains that

23

24

ORDER ON MOTIONS FOR SUMMARY
JUDGMENT- 23

1 Tacoma School District Policy 5350 cannot be interpreted to supersede plaintiff's statutory Due

2 Process rights.

3       In order to set forth a claim against a municipality under 42 U.S.C. § 1983, a plaintiff

4 must show that the defendant's employees or agents acted through an official custom, pattern or

5 policy that permits deliberate indifference to, or violates, the plaintiff's civil rights; or that the

6 entity ratified the unlawful conduct. *See Monell v. Department of Social Servs.*, 436 U.S. 658,

7 690-91 (1978); *Larez v. City of Los Angeles*, 946 F.2d 630, 646-47 (9th Cir. 1991). The

8 municipal action must be the moving force behind the injury of which plaintiff complains.

9 *Board of County Commissioners of Bryan County v. Brown*, 520 U.S. 397, 405 (1997).

10       Even if the MOU granted leaves of absence for Tacoma School District employees, those

11 leaves of absence were required to be "consistent with Tacoma School District policies." The

12 Tacoma School Board approved leaves of absence. Plaintiff argues that Policy 5350 does not

13 require Board approval, but merely provides that a "leave request is *subject* to board approval at

14 its discretion." *Emphasis added by plaintiff*. Dkt. 23, at 3. This interpretation is contrary to the

15 notification on the leave request forms, and contrary to the facts, which show that, for years

16 2005-06 and 2006-07, plaintiff was notified that the Board had approved his requests for leave of

17 absence. At the most, the record shows that there was no clear policy authorizing staff to make

18 decisions on requests for leave of absence. In the absence of Board approval of another year of

19 leave, Policy 5350 required the employee to return to the Tacoma School District within five

20 days of the end of the leave. If the employee did not do so, the employee was considered to have

21 abandoned his or her job. Plaintiff has failed to show that Policy 5350 either amounted to

22 deliberate indifference to plaintiff's constitutional rights or was the moving force behind a

23 constitutional violation.

24

1     Plaintiff contends that he remained an employee of the Tacoma School District through

2  September of 2011, relying on conversations and e-mails with Human Resources and

3  administrative personnel.  While these facts may be relevant to plaintiff's state law claims, they

4  do not support plaintiff's claim that a policy of the Tacoma School District violated his

5  constitutional rights.

6     Plaintiff  argues that Policy 5350 violated his right to due process because the policy

7  conflicted with the requirements of RCW 28A.  Defendants maintain that the policy does not

8  conflict with RCW 28A, citing *Simpson v. Kelso School Dist. No. 403*, *supra*, and *Arnim v.*

9  *Shoreline School Dist. No. 412*, *supra*.  Both parties argue statutory interpretation with regard to

10  RCW 28A.  These are issues of state law that may, or may not, support plaintiff's state law

11  claims.

12     Finally, plaintiff alleges that Dr. Jarvis' actions should be imputed to the Tacoma School

13  District, arguing that Dr. Jarvis is a policy maker.  Whether an official had final policymaking

14  authority is a question of state law.  *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986).

15  Under RCW 28A.320.010, the school board is vested by the Legislature with policy-making

16  authority.  As the Tacoma School District's Superintendent, Dr. Jarvis was a contracted

17  employee of the School Board, with prescribed duties and responsibilities.  RCW 28A.400.010

18  and .030.  The record does not establish that Dr. Jarvis was a policy maker, in the circumstances

19  of this case.  However, even if Dr. Jarvis can be considered a policy maker, as discussed above,

20  there is no municipal liability for violation of plaintiff's federal civil rights.

21     Accordingly, the record does not show that the Tacoma School District acted through an

22  official custom, pattern or policy that permits deliberate indifference to, or violates, the

23

24

1  plaintiff's civil rights, nor does the record show that any policy was the moving force behind any

2  unconstitutional action.

3      **2. State Law Claims**

4      Plaintiff has alleged claims for wrongful termination under RCW 28A, breach of

5  contract, and promissory estoppel.

6      Under 28 U.S.C. § 1367, a federal court may assume supplemental jurisdiction over all

7  other claims that are so related to claims in the action within the original jurisdiction so that they

8  form part of the same case or controversy.  The Court may decline to exercise this supplemental

9  jurisdiction if (1) the claim raises a novel or complex issue of state law, (2) the claim

10  substantially predominates over the claim or claims over which the district court has original

11  jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction,

12  or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

13  28 U.S.C. § 1367(c).

14      In this case, the claims over which the court has original jurisdiction, pursuant to 28

15  U.S.C. § 1983, are dismissed by this order.  The state law claims, notably those with regard to

16  breach of contract, estoppel, and interpretation of the provisions of RCW 28A, appear to involve

17  complex issues of state law, particularly in light of the facts in the record.  Further, the claims

18  under state law appear to predominate over the federal constitutional claims over which the court

19  had original jurisdiction.  The parties should be required to show cause why the court should not

20  decline to exercise supplemental jurisdiction over the state law claims, and should not dismiss

21  those claims without prejudice.

22      Accordingly, it is hereby **ORDERED** that Defendants' Motion for Summary Judgment

23  on All Claims (Dkt. 12) is **GRANTED IN PART**, as follows:  Plaintiff's claims under 42 U.S.C.

24

§ 1983 are **DISMISSED WITH PREJUDICE**.  Plaintiff's Cross-Motion for Partial Summary Judgment (Dkt. 17) is **DENIED** in part, as follows:  Plaintiff's request for summary judgment as to his claims under 42 U.S.C. § 1983 is **DENIED**.  Not later than May 6, 2013, the parties are directed to show cause, if any they may have, why the court should not decline to exercise supplemental jurisdiction over the state claims.  If the parties fail to respond to the order to show cause, or if they otherwise fail to show cause, the court will dismiss the state law claims without prejudice.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

Dated this 29th day of April, 2013.

ROBERT J. BRYAN
United States District Judge